

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1920 | **DATE** | 7/28/2003 |
| **CASE TITLE** | Xechem, Inc. vs. Bristol Myers Squibb | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing held.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion to dismiss is granted and Plaintiffs' complaint is hereby dismissed. Any pending dates are stricken. Any pending motions are denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | JUL 29 2003 date docketed | |
| ✓ | Docketing to mail notices. | | 14 |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TH | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| XECHEM, INC., and<br>XECHEM INTERNATIONAL, INC.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>BRISTOL-MYERS SQUIBB CO.,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)　　No. 03 C 1920<br>)<br>)<br>)<br>)<br>) |

DOCKETED
JUL 2 9 2003

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, Judge:

Plaintiffs filed a three-count complaint against Bristol-Myers Squibb Co. ("Bristol-Myers"), alleging violations of federal and state antitrust laws. Bristol-Myers moves to dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6). Bristol-Myers argues that (1) Plaintiffs suffered no antitrust injury and (2) Plaintiffs' claims are time-barred. The Court agrees with the latter argument, and grants Bristol-Myers' motion for the reasons stated herein.

### BACKGROUND[1]

#### I.　The FDA Approval Process

The Hatch-Waxman Act, 21 U.S.C. § 355, requires companies to obtain approval from the Food and Drug Administration ("FDA") before selling or marketing pharmaceutical products in the United States. (R. 1-1, Compl. ¶ 15.) A company must file a New Drug Application ("NDA") to obtain such approval. (*Id.*) The FDA requires branded-drug companies "to identify to prospective generic competitors all patents that it believes describe the branded drug" after the approval. (*Id.* at ¶ 17.) The FDA then publishes all of the identified patents in "Approved Drug Products with Therapeutic Equivalence Evaluations," or the "Orange Book" and "views its role in listing patents in the Orange Book as purely ministerial." (*Id.* at ¶¶ 18, 19.)

---

[1] The Court assumes that the allegations in Plaintiffs' complaint are true for purposes of this Rule 12(b)(6) motion. *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000).

14

Companies interested in manufacturing and selling a generic product may file an Abbreviated New Drug Application ("ANDA"). (*Id.* at ¶ 20.) As part of the ANDA, the applicant "must provide certification to the FDA with respect to each patent listed in the Orange Book relating to the branded drug." (*Id.*) Applicants must certify either: (I) that no patent information regarding the product has been submitted to the FDA, (II) that the relevant patent has expired, (III) that the relevant patent will expire on a particular date, or (IV) that the patent is invalid or will not be infringed by the generic product. This fourth type of certification is also known as Paragraph IV Certification. (*Id.* at ¶ 21.)

If an applicant submits a Paragraph IV Certification, the branded-drug company and patentee have forty-five days from notification to file an infringement suit. (*Id.* at ¶ 22.) If neither party files suit against the applicant, the ANDA may proceed to final approval. (*Id.*) If either party files an infringement suit against the applicant, however, the FDA stays final approval of the ANDA until either: (a) the patent expires, (b) a court makes a determination of non-infringement or patent invalidity, or (c) the expiration of thirty months. (*Id.* at ¶ 23.) To compensate for the possibility of defending an infringement suit, the FDA provides the first applicant to file an ANDA with Paragraph IV Certification with one-hundred-and-eighty days of market exclusivity. (*Id.* at ¶ 24.) The exclusivity period begins on the date that the applicant begins marketing and selling its product or on the date that a court makes a non-infringement or patent invalidity determination. (*Id.*)

## II. Bristol-Myer's Product And Patents

On December 27, 1992, the FDA allowed Bristol-Myers to sell paclitaxel, which Bristol-Myers markets under a trademarked name of Taxol. This approval automatically triggered the five-year period of market exclusivity pursuant to the Hatch-Waxman Act. (R. 1-1, Compl. ¶¶ 9, 14, 28.) Originally, the FDA only approved this product for the treatment of ovarian cancer, but later approved use of the drug to treat breast cancer, lung cancer, and AIDS-related Kaposi's sarcoma. (*Id.* at ¶ 9.) At the time that the FDA initially approved Bristol-Myers' use, Defendant "understood that paclitaxel was not patentable . . . in view of prior public use, public knowledge,

2

and written publications regarding the drug." (*Id.* at ¶ 29.)

In an attempt to expand its exclusivity rights to the drug beyond five-years, Bristol-Myers obtained purportedly fraudulent patents in 1997. Bristol-Myers attempted to enforce these patents through infringement suits. In one of these suits, a district court found at the summary judgment stage that these patents were invalid as a matter of law. *See Bristol-Myers Squibb Co. v. Boehringer Ingelheim Corp.*, 86 F.Supp.2d 433 (D.N.J. 2000). In April 2001, the Federal Circuit affirmed this decision in part and vacated it in part. *See Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368 (Fed. Cir. 2001). The Federal Circuit found that while certain patents were invalid as a matter of law, there were questions of fact related to the validity of others that precluded summary judgment. *Id.*

### III.    Plaintiffs Take Steps To Enter The Market

In anticipation of the expiration of Bristol-Myers' five-year period of market exclusivity, Plaintiffs took steps to enter the drug market for paclitaxel. As of 1996, Plaintiffs had secured $7.3 million in new capital. (*Id.* at ¶ 35.) Plaintiffs also had negotiated development, marketing, and supply agreements with two Canadian pharmaceutical companies, Sabex and Apotex. (*Id.*) Plaintiffs assert they only had to complete their generic formulation and file an ANDA to market their version of paclitaxel. (*Id.*)

Plaintiffs allege that Bristol-Myers, however, caused them to postpone their entry into the paclitaxel market when Bristol-Myers filed to extend Taxol's Orphan Drug Status with the FDA and applied for Taxol-related patents. (*Id.* at ¶¶ 38-39, 51, 69-70.) Plaintiffs contend that Bristol-Myers' success in obtaining these patents caused Plaintiffs to postpone filing an ANDA for their product. (*Id.* at ¶ 39.) Although Bristol-Myers kept Plaintiffs out of the United States' market until 2002, Plaintiffs successfully obtained production, marketing, distribution, and sale agreements in other parts of the world. (*Id.* at ¶¶ 39-40.)

### ANALYSIS

Plaintiffs' three-count complaint alleges two violations of Section 2 of the Sherman Act, 15 U.S.C. § 2, and one violation of the Illinois Antitrust Act, 740 ILCS 10/1. Bristol-Myers

seeks to dismiss the complaint pursuant to Rule 12(b)(6) on two separate grounds. First, Defendant argues that Plaintiffs' allegations show that they do not have the requisite antitrust standing as a matter of law. Second, Defendant argues that Plaintiffs' federal and state claims are time-barred.

I. **Standard**

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint, not the merits of a claim. *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). In evaluating a 12(b)(6) motion, a court examines the facts alleged in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000). Dismissal is appropriate only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" of the complaint. *Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

A complaint need not set out in detail the facts upon which a plaintiff bases his claim. *Benson v. Cady*, 761 F.2d 335, 338 (7th Cir. 1985). A complaint, however, must "include either direct or inferential allegations with respect to all material elements of the claims asserted." *Indus. Hard Chrome, Ltd. v. Hetran, Inc.* 64 F.Supp.2d 741, 744 (N.D. Ill. 1999) (citing *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991)). Attaching bare legal conclusions to narrated facts fails to satisfy federal pleading requirements. *Strauss v. City of Chicago*, 760 F.2d 765, 768 (7th Cir. 1985).

II. **It Is Premature To Conclude That Plaintiffs Did Not Intend Or Were Not Prepared To Enter The Paclitaxel Market Within A Reasonable Time**

In order to bring a private antitrust case, a plaintiff must have antitrust standing. Antitrust standing, however, differs from Constitutional standing. "Harm to the antitrust plaintiff is sufficient to satisfy the constitutional standing requirement of injury in fact, but the court must make a further determination whether the plaintiff is a proper party to bring a private antitrust action." *Associated Gen. Contractors v. California State Council of Carpenters*, 459 U.S. 519, 535 n.31, 103 S.Ct. 897, 907 n.31, 74 L.Ed.2d 723 (1983) (internal citations omitted). To show

4

an antitrust injury, a party must demonstrate that: (1) the alleged injury is the type of injury the antitrust laws were designed to prevent, and (2) the alleged injury "flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat*, 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977).

Defendant contends that Plaintiffs lack antitrust standing to assert a claim of exclusion from the market because they were never prepared to enter the paclitaxel market in the first place. Defendant contends that Plaintiffs' allegation that they did not, and have not, filed an ANDA is dispositive of the issue. While the Seventh Circuit has not encountered this issue, other federal courts have split in their rulings. *Compare Andrx Pharm. Inc. v. Biovail Corp. Int'l*, 256 F.3d 799, 808 (D.C. Cir. 2001)[2] (party "could have alleged its intent and preparedness to enter the market by claiming that FDA approval was probable" even without ANDA approval itself), and *Bristol-Myers Squibb Co. v Ben Venue Labs.*, 90 F.Supp.2d 540, 545-46 (D.N.J. 2000) (party invoking antitrust standing "need not demonstrate that the FDA has first approved its products"), with *Bristol-Myers Squibb Co. v. Copley Pharm., Inc.*, 144 F.Supp.2d 21, 23 (D. Mass. 2000) (finding lack of standing where there was no FDA approval).

The Court finds that a *per se* rule requiring an ANDA filing in order to assert antitrust standing is inconsistent with Seventh Circuit law. When assessing antitrust standing for plaintiffs that are only potential manufacturers, the Seventh Circuit has adopted the "intention and preparedness" test to determine whether the plaintiffs have antitrust standing. Under this test, a plaintiff must "show that it intended to enter" the relevant market and "was prepared to do so within a reasonable time." *Grip-Pak, Inc. v. Illinois Tool Works, Inc.*, 694 F.2d 466, 475 (7th Cir. 1982), disapproved of on other grounds by *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). Although the Seventh Circuit has never expanded upon this language, the Court finds that the *per se* rule

---

[2] In arguing that an ANDA is required for antitrust standing as a matter of law, Bristol-Myers cites *Andrx Pharm.*, 256 F.3d at 808. (R. 10-1, Def. Mem. at 7.) This case, however, supports the opposite conclusion. In *Andrx Pharmaceuticals*, the appellate court reversed the lower court's holding that FDA approval is necessary to show preparedness. *Andrx Pharm, Inc.*, 256 F.3d at 808.

5

advocated by Defendant requiring an ANDA filing is inconsistent with the test.

The Seventh Circuit's inclusion of the term "reasonable time" within the language of the "intention and preparedness" test suggests that a plaintiff does not need to have filed for approval, so long as that approval process would not significantly delay a plaintiff's attempts to enter the market. Whether Plaintiffs could enter the paclitaxel market within a "reasonable time" would rest, in part, on: (1) the time it would take for them to complete their formulation and to file their ANDA, (2) the likelihood of FDA approval, and (3) the time that it would take to obtain that approval. Accordingly, a *per se* ANDA filing requirement is not proper.

It is apparent, instead, that the "intention and preparedness" test requires a factual inquiry. The Seventh Circuit generally recognizes that "establishing antitrust injury involves complex questions of fact." *Southwest Suburban Bd. of Realtors, Inc. v. Beverly Area Planning Ass'n*, 830 F.2d 1374, 1381 (7th Cir. 1987); *see also Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 602 n.25 (7th Cir. 1993). These complex questions of fact arise in equal force where a plaintiff has yet to enter into a market. Several other appellate courts that have adopted the "intention and preparedness" test have illustrated this point by conducting factually-intensive inquiries in deciding whether a party has antitrust standing. *See In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 11 F.3d 1460, 1465 (9th Cir. 1993); *Curtis v. Campbell-Taggart, Inc.*, 687 F.2d 336, 338 (10th Cir. 1982); *Martin v. Phillips Petroleum Co.*, 365 F.2d 629, 633-34 (5th Cir. 1966).[3] Rule 12(b)(6) motions are not normally intended to resolve such complex factual issues.

Plaintiffs have sufficiently alleged a number of facts that are probative of their preparedness to enter the paclitaxel market. First, Plaintiffs allege that they began planning entry into the paclitaxel market in 1994. (R. 1-1, Compl. ¶ 33.) Second, by 1996, Plaintiffs had $7.3

---

[3] These appellate courts look to four elements in evaluating a plaintiff's preparedness: (1) the plaintiff's ability to finance its venture, (2) the plaintiff's relevant contracts, (3) the plaintiff's affirmative actions towards entering the market, and (4) the plaintiff's background and experience in the particular business. *In re Dual-Deck*, 11 F.3d at 1465; *Curtis*, 687 F.2d at 338; *Martin*, 365 F.2d at 633-34. Obviously aware of this test, Plaintiffs provide allegations supporting all four elements.

6

million in funding to finance their entry into the market. (*Id.* at ¶ 35.) Third, Plaintiffs executed two contracts for developing, marketing, and supplying generic Taxol. (*Id.* at ¶ 35.) Fourth, Plaintiffs assert that the only barriers to their entry were a completion of their formulation and the ANDA filing and approval process. (*Id.* at ¶ 35.) Fifth, although Bristol-Myers kept Plaintiffs out of the U.S. market until 2002, Plaintiffs successfully obtained production, marketing, distribution, and sales agreements in other parts of the world starting in 1998. (*Id.* at ¶¶ 39-40.) Providing Plaintiffs with all reasonable inferences, this last allegation suggests that Plaintiffs may have been in the position to file for FDA approval with the ANDA as early as 1998, but for Defendant's purportedly fraudulently-obtained patents. Although Defendant argues that Plaintiffs may not have received ANDA approval once they applied and that it may have taken years to obtain such approval negating Plaintiffs' entry within a reasonable time, these again are factual inquiries. Given Plaintiffs' allegations, it is premature to find that Plaintiffs cannot establish antitrust injury.

## II. The Applicable Statute Of Limitations Bars Plaintiffs' Claims

Damages sought under the federal antitrust acts are generally only recoverable if a plaintiff files suit within four years of the cause of action's accrual. 15 U.S.C. § 15(b); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971). A cause of action generally accrues "when a defendant commits an act that injures a plaintiff's business." *Id.* Plaintiffs' injury here is exclusion from the paclitaxel market. "Exclusion from a market is a conventional form of antitrust injury that gives rise to a claim for damages as soon as the exclusion occurs . . . ." *Brunswick Corp. v. Riegel Textile Corp.*, 752 F.2d 261, 271 (7th Cir. 1984).

Plaintiffs allege that Bristol-Myers' receipt of Taxol patents caused Plaintiffs to postpone filing an ANDA for their version of generic Taxol. Plaintiffs allege that the prospect of financing a defense of inevitable infringement litigation discouraged them from entering the paclitaxel market. Plaintiffs' injury therefore accrued in 1997 when they decided not to file an ANDA after Bristol-Myers received Taxol-related patents. Having not filed suit until March 18, 2003,

7

Plaintiffs' claims would normally be barred.

Plaintiffs contend, however, that their claims should fall within the continuing violation exception. The Supreme Court has recognized a continuing violation exception to the statute of limitations in antitrust actions. *Zenith Radio Corp.*, 401 U.S. at 338. "A continuing antitrust violation is one in which the plaintiff's interests are repeatedly invaded." *Grand Rapids Plastics, Inc. v. Lakian*, 188 F.3d 401, 406 (6th Cir. 1999). Thus, "each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and that, as to those damages, the statute of limitations runs from the commission of the act." *Zenith Radio Corp.*, 401 U.S. at 338. The continuing antitrust violation exception requires an overt act on the part of a defendant to restart the statute of limitations. *Grand Rapids Plastics*, 188 F.3d at 406. Additionally, the defendant's overt act (1) "must be a new and independent act that is not merely a reaffirmation of a previous act," and (2) "it must inflict new and accumulating injury on the plaintiff." *Id.*

Plaintiffs assert that Bristol-Myers' various infringement suits as well as its "listing of the spurious patents in the Orange Book" constituted the continuing violations. (R. 12-1, Pls.' Mem. at 11.) These actions by Bristol-Myers, however, fail to satisfy the *Grand Rapids Plastics* two-part test. While Bristol-Myers' infringement suits may constitute independent acts, it is undisputed that the infringement lawsuits did not inflict new and accumulating injury on the plaintiff. Plaintiffs admit that these lawsuits "did nothing more than reaffirm BMS's earlier efforts to block . . . Xechem . . . from competing with BMS." (*Id.* at 10.) Plaintiffs' complaint does not allege any new and accumulating injuries caused by Bristol-Myers' later acts. Plaintiffs therefore have not alleged a continuing violation. Accordingly, the Court dismisses Plaintiffs' federal antitrust counts as time-barred.

Similar to federal law, the Illinois Antitrust Act states that "[a]ny action for damages under this subsection is forever barred unless commenced within 4 years after the cause of action accrued." 740 ILCS 10/7. Plaintiffs and Defendant agree that the Court's holding with respect to whether the federal claims are time-barred governs Plaintiffs' state laws claims. Plaintiffs have

not raised an independent reason why Illinois' statute of limitations should be tolled. Accordingly, Plaintiffs' claim under the Illinois antitrust laws is also time-barred.

## CONCLUSION

Plaintiffs' federal and state antitrust claims are time-barred under four-year statutes of limitations. Plaintiffs' cause of action accrued in 1997, but they did not file suit until 2003. Plaintiffs have not alleged a continuing violation. Accordingly, the Court grants Defendant's motion to dismiss.

DATED: July 28, 2003                                    ENTERED

                                                        _____
                                                        AMY J. ST. EVE
                                                        U.S. District Court Judge